# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5456 | **DATE** | 4/10/2003 |
| **CASE TITLE** | Allstate Insurance Company, et al. vs. City of Chicago, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of defendant City of Chicago to dismiss [9-1] is granted. Motion of defendant Harza Environmental Services, Inc. to dismiss [12-1] is granted. The Court dismisses plaintiffs' Count I CWA claim with prejudice for lack of subject matter jurisdiction. The Court declines to exercise supplemental jurisdiction over the Count II, III and IV claims and dismisses those claims without prejudice. Case dismissed. The case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. Mailed by MD. | | docketing deputy initials | 38 |
| | Copy to judge/magistrate judge. | | 4/10/2003 | |
| MD | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD  mailing deputy initials | |

.   .
    .   .

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | ) |
| ATLANTIC MUTUAL INSURANCE | ) |
| COMPANY, ENCOMPASS INSURANCE, | ) |
| HARTFORD CASUALTY INSURANCE | ) |
| COMPANY, ST. PAUL COMPANIES, | ) |
| STATE FARM FIRE AND CASUALTY and | ) |
| STATE FARM MUTUAL AUTO, both | ) |
| individually and as subrogees of their respective | ) |
| insureds, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF CHICAGO, a municipal corporation, | ) |
| and HARZA ENVIRONMENTAL SERVICES, | ) |
| INC., a/k/a Harza Engineering Company, | ) |
| | ) |
| Defendants. | ) |

No. 02 C 5456
Judge Joan H. Lefkow

COO
APR 1 4 2003

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Allstate Insurance Company, Atlantic Mutual Insurance Company, Encompass

Insurance, Hartford Casualty Insurance Company, St. Paul Companies, State Farm Fire and

Casualty and State Farm Mutual Auto (collectively "plaintiffs") bring this law suit against

defendants, the City of Chicago ("Chicago") and Harza Environmental Services ("Harza")

alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.* (Count I), and,

under Illinois law, negligence (Count II), nuisance (Count III) and trespass (Count IV).  Chicago

and Harza each have moved to dismiss the plaintiffs' Complaint under Rules 12(b)(1) and

12(b)(6), Fed. R. Civ. P.  The court has jurisdiction over the claims pursuant to 33 U.S.C. § 1365

and 28 U.S.C. § 1367.  For the reasons set forth below, the court dismisses the CWA claims for

lack of standing and dismisses without prejudice the state law claims.

38

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. In determining whether subject matter jurisdiction exists, the court is not required to accept plaintiffs' allegations as true. A "district court ha[s] not only the right, but the duty to look beyond the allegations of the complaint to determine that it ha[s] jurisdiction. . . ." *Hay* v. *Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002). However, when examining the material allegations of the complaint, the court must draw all reasonable inferences therefrom in favor of the plaintiff. *Retired Chicago Police Ass'n* v. *City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996).

Conversely, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## FACTS[1]

Chicago operates a combined sewer system designed to remove both raw sewage and storm water from within Chicago's city limits. Harza acted and continues to act as the engineering design consultant to Chicago and supervises the ongoing "Rainblocker" program, which has the purpose of retrofitting the storm water aspect of the combined sewer system. Under the Rainblocker program, the amount of storm water flow into the sewers was to be limited by a number of measures, the purpose being to prevent overtaxation of the sewer's capacity to convey the water away. Previously, because of the nature of the combined system, any measurable level of rainfall would fill up the combined sewers, causing the sewers to overflow, back up in basements, and eventually discharge into navigable waters in the area. The concept of Rainblocker was to limit the entry of storm water into the sewers through disconnecting homeowner "down spouts" and placing inlet restrictors between the streets and sewers. In theory, this two part process diverts run-off away from the sewers and limits the amount of water intake from the street into the sewer system. The end result would be the elimination of flooding and sewer discharge into area navigable waters after storms.

According to plaintiffs, one of the key components of the system was that the residential "down spouts" were to be disconnected. If the down spouts were not disconnected, plaintiffs allege that the Rainblocker program would not function according to the plan's design, and flooding and sewer discharge in basements and navigable waters would continue. Plaintiffs

---

[1]The facts as set forth herein are taken from plaintiffs' Complaint and a copy of the letter plaintiffs sent to Chicago and Harza as required by § 1365(b)(1)(a) of the CWA. The notice letter may be referenced on this motion to dismiss because it is attached as an exhibit to the Complaint and explicitly incorporated by reference. *E.g., Tierney* v. *Vahle*, 304 F.3d 734, 737 (7th Cir. 2002); *Beanstalk Group, Inc.* v. *AM Gen. Group*, 283 F.3d 856, 858 (7th Cir. 2002).

allege that the Rainblocker program was not effective because Chicago and Harza did not systematically and uniformly disconnect the down spouts on residential properties. As a result, damage resulted to basements and other property of homeowners that were insured by plaintiffs. Plaintiffs further allege that both Chicago and Harza exceeded waste water discharge limits as well as the permissible point source limitations under the CWA contained in the National Pollutant Discharge Elimination System ("NPDES") permit issued to Chicago (Permit No. IL 0045012) (the "NPDES permit").

Plaintiffs maintain that they are property insurance carriers that afford property insurance to thousands of individuals and businesses that own, occupy or operate rental apartments, automobiles, houses, offices, stores, condominiums, warehouses, factories, restaurants, and other types of commercial and residential property situated within Chicago, and these insureds use and enjoy the ecosystems affected by storm water discharges and sources governed by the NPDES permit issued to Chicago. Moreover, plaintiffs allege that, because of their respective insurance policies with the insureds (a list of whom are attached to the complaint), they are subrogated to the claims of those respective insureds against Chicago and Harza based on property damage sustained.

## DISCUSSION

Plaintiffs seek injunctive and compensatory relief for Chicago and Harza's alleged violations of the CWA (Count I), negligence (Count II), nuisance (Count III) and trespass (Count IV). Chicago moves for dismissal of plaintiffs' CWA claims because plaintiffs (1) failed to give Chicago adequate notice as required under the CWA and (2) lack standing. As for the state law claims, Chicago argues, all such claims should be dismissed because Chicago has discretionary

immunity for its acts or omissions in installing, constructing, operating and maintaining the

Rainblocker program. Finally, Chicago argues that the insurance companies have requested

inappropriate relief. Harza moves for dismissal on grounds that (1) any flooded basements and

standing water are not protected waters of the United States under the CWA; (2) failure to

disconnect the down spouts or otherwise implement the Rainblocker program was not a NPDES

permit violation; (3) subrogated insurers' interests are not protected by the CWA; (4) plaintiffs

lack standing; (5) plaintiffs' Notice letter and Complaint allege no violation by Harza; (6) Harza

cannot be liable because it is neither a permittee nor an operator; and (7) plaintiffs fail to allege

proximate cause necessary for tort liability. Because the court concludes that plaintiffs lack

standing to assert the CWA claims, it considers only that argument and will analyze the CWA

and state law claims separately.

## A. Standing under the CWA

The question of standing is "the threshold question in every federal case, determining the

power of the court to entertain the suit." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). "In its

constitutional dimension, standing imports justiciability: whether the plaintiff has made out a

'case or controversy' between himself and the defendant within the meaning of Art. III." *Id.* The

burden of establishing the required elements of standing lies with the plaintiff. *Retired Chicago*

*Police Ass'n*, 76 F.3d at 862, citing *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A

dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate, where

standing is challenged as a factual matter, when a plaintiff fails to support the allegations

necessary for standing with "competent proof." *Id.; Perry* v. *Village of Arlington Heights*, 186

F.3d 826, 829 (7th Cir. 1999). The Seventh Circuit has interpreted "competent proof" as

"requiring a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Id.*, citing *NLFC, Inc.* v. *Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir.), *cert. denied*, 515 U.S. 1104 (1995).

A showing of constitutional standing requires (1) an actual or threatened injury-in-fact (2) that is fairly traceable to the defendant's alleged violation of the CWA and (3) that could be redressed if the plaintiff wins in the lawsuit. *Lujan*, 504 U.S. at 560-61. Perhaps acknowledging that any injury in this case (i.e., having to pay out claims under insurance policies) is traceable to flooded basements and other property damage but not to discharges into navigable waters, plaintiffs attempt to proceed under the doctrine of associational standing. As stated by the Seventh Circuit in *Retired Chicago Police Ass'n*,

> The doctrine of associational standing is an exception to the general prohibition of representational standing. In order to obtain associational standing, an organization must meet the three prong-test set forth in *Hunt* v. *Washington State Apple Advertising Comm'n*:
>> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit.
> 432 U.S. 33, 343, 97 S. Ct. 2434, 2441, 53 L.E. 2d 383 (1977); *see also Sanner* v. *Board of Trade*, 62 F.3d 918, 922 (7th Cir. 1995).

76 F.3d at 862-63. Before considering the factors above, the threshold question is whether the insurance companies even qualify as an association and its insured as members. To qualify under a theory of associational standing, the insureds would have to "possess all of the indicia of members in an organization." *Hunt*, 432 U.S. at 344. The court in *Hunt* found the following factors relevant in finding a state agency an association even though it was not a traditional

voluntary membership organization,

> [The members] alone elect the members of the Commission; they alone finance its
> activities, including the costs of this lawsuit, through assessments levied upon
> them. In a very real sense, therefore, the Commission represents the State's
> growers and dealers and provides the means by which they express their collective
> views and protect their collective interests.

*Id.* at 344-45. In a situation similar to the one present here, another district court found an

insurance company not to qualify as an association and its insureds not to qualify as members.

*See Group Health Plan, Inc.* v. *Philip Morris Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000).

After discussing the indicia of membership characteristics described in *Hunt*, the court noted,

> In this case, Plaintiffs' members do not appear to possess any of these
> characteristics. In fact, Plaintiffs do not even allege the requisite indicia of
> membership. Instead, Plaintiffs describe themselves as health maintenance
> organizations that contract with health care service providers and purchase health
> care services for their members. . . . Thus, the relationship between Plaintiffs and
> their "members" is most aptly described as [] that of a business-consumer
> relationship, which is readily distinguishable from the traditional association-
> member relationship necessary to support an assertion of associational standing.

*Id.*

Even viewing the facts in plaintiffs' Complaint as true, no indicia of membership in an

organization is present so as to grant the plaintiffs standing under an association theory. The

relationship between the insureds and the plaintiffs is a business-consumer relationship whereby

the insured purchases insurance from the plaintiffs for coverage against certain losses. The

insureds have no input as to how the plaintiffs run their business or who is in control. The

plaintiffs are not a forum for the insureds to otherwise express their views or have their interest

in a clean environment protected. The plaintiffs also do not provide the means by which the

insureds express their collective views or protect their collective interests. Accordingly, the court

concludes that plaintiffs are not "organizations" and their insureds not "members" for which the plaintiffs may assert their insureds' rights under the CWA.[2]

In further support of standing, plaintiffs argue, under a subrogation theory, that if an insured could have brought the claim independently, then the insurer can also. Simply put, plaintiffs paint with too broad a brush. While the court does not doubt that under the law of subrogation an insurer can stand in the shoes of its insured, this would only be the case for the particular claim or debt paid. *E.g., Walker* v. *Ridgeview Constr.* Co., 316 Ill. App. 3d 592, 597, 736 N.E. 2d 1184, 1188 (2000) ("the doctrine of Subrogation is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the right of the other *with respect to the claim or debt so paid.*") (emphasis added); *see also, State Farm Gen. Ins. Co.* v. *Stewart*, 288 Ill. App. 3d 678, 682-83, 681 N.E. 2d 625, 628 (1997). This doctrine does not allow an insurer to assert broader claims, such as CWA claims, for the insured, at least not when the particular claim paid is unrelated to the CWA. Whatever subrogated claims the plaintiffs could assert on behalf of their insureds for the flooding of the basements or similar damages, such claims would not include actions under the CWA for pollutants allegedly discharged in navigable waters in excess of an NPDES permit. Contrary to plaintiffs' suggestions, the court will not read any subrogation rights broad enough to include interests their insureds have in the use and enjoyment of the ecosystems allegedly affected by the unauthorized discharges by Chicago and Harza.

---

[2]Even if an insurance company were found to be an association and its insureds members of that association, the interests sought for protection here are far from an insurance company's "germane purpose." The purpose of such an organization would not be to prevent excessive discharges under the CWA or to protect its insureds' interests in clean ecosystems. Instead, the purpose of such an organization is to collect payments from insureds, to pay out claims according to its policies, and attempt to recoup on claims. While the plaintiffs maintain that they would pay any health or property damage claims that their insureds suffer, this does not transform the "germane purpose" of an insurance company away from a private profit-motivated corporation.

Because the court concludes that plaintiffs lack standing to assert CWA claims on behalf of their insureds, the court lacks subject matter over plaintiffs' Count I claim. Accordingly, the CWA claim is dismissed with prejudice.

**B.     State Law Claims**

With the dismissal of the CWA claim, the court is left with state law negligence, nuisance and trespass claims for which it has only supplemental jurisdiction under 28 U.S.C. § 1367. Under § 1367(c)(3), the court may decline to exercise supplemental jurisdiction when all claims over which original jurisdiction is present are dismissed. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court dismissed all claims over which it has original jurisdiction."). Both Harza and Chicago urge the court to address the merits of the state tort claims because "when a state-law claim is clearly without merit, it invades no state interest–on the contrary, its spares the overburdened state court additional work that they do not want or need . . . ." *Coe* v. *County of Cook*, 162 F.3d 491, 496 (7th Cir. 1998). This, however, is not the normal course in this circuit. *E.g., Groce* v. *Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

Because these claims are based on and raise issues of Illinois state law and because Illinois state courts have greater familiarity and expertise in dealing with such issues, the court declines to exercise supplemental jurisdiction. As such, these state law claims are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Chicago's motion to dismiss is granted [#12] and Harza's motion to dismiss [#18] is granted. The court dismisses plaintiffs' Count I CWA claim with prejudice for lack of subject matter jurisdiction. The court declines to exercise supplemental jurisdiction over the Count II, III and IV claims and dismisses those claims without prejudice. This case is terminated.

ENTER:_____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 10, 2003